You'll hear argument in Case 12-1408, United States v. Quality Stores. Mr. Fagan. Thank you, Mr. Chief Justice, and may it please the Court. The payments in this case fall squarely within FICA's basic definition of wages, which includes all remuneration for employment. Consistent with the purpose of FICA to fund the Social Security and Medicare programs, this Court has construed the term employment broadly to encompass the entire employer-employee relationship. The payments here, which were paid only to respondents' employees and were keyed to the employees' positions, salary levels, and length of service, clearly were part of the employer-employee relationship. Two particular features of the statute, I think, make especially clear that separation-related payments like this are covered. First, the basic definition of wages, both historically and currently, has been subject to specific exclusions for certain types of separation-related pay, such as retirement pay. Those exclusions would be unnecessary if the basic definition of wages didn't cover separation-related payments. Second, one of the historical exclusions, which was in the statute from 1939 to 1950, was for certain types of dismissal payments. When Congress eliminated the exception for certain types of dismissal payments in 1950, the accompanying House report made clear what would already have been, in any event, implicit in the repeal itself, which is that from that point forward, all dismissal payments, which were, Congress understood in the House report, to include any payment on account of an employee's involuntary separation, would be considered wages under FICA. Respondents' reliance in this case on Section 34020 is misplaced. Section 34020 is a substantive rule of income tax withholding that is expressly limited in its effect to Chapter 24, which is the income tax withholding chapter, and related procedural provisions. It has no bearing on the definition of wages for purposes of FICA. In any event. Ginsburg. Well, don't we have a decision that says that the term wages should be interpreted the same way for FICA purposes and income tax? Well, two points about that, Your Honor. First of all, nothing in this Court's decision in Rowan suggests that this Court or any court needs to look to substantive rules of income tax withholding to determine the basic definition of wages for purposes of FICA. I think it's clear from the preamble to Section 34020 that Congress was focused on Chapter 24 and was trying to solve a specific problem within Chapter 24, the income tax withholding chapter, and it didn't intend to send essentially shock waves through the Internal Revenue Code that would affect the definition of wages in other chapters. Second, Respondents' view, I think, would undercut the basic principle animating Rowan, which is the idea that the definitions of wages should be congruent for purposes of administrability. Respondents' reading, which would say that none of the payments specified in Section 340202a can possibly be considered wages for FICA purposes, but nevertheless must be treated as wages for withholding purposes, would require employers to keep separate track of wages for the two different purposes and report them separately when they do W-2 forms for the employees or their own 941 tax returns. Now, Respondents have conceded that Section 34020 did not modify the preexisting definition of wages under either FICA or the income tax withholding chapter. Instead, their argument seems to be that the definition of wages in FICA, even before Section 34020 was enacted, contained a hole precisely the size and shape of the definition of supplemental unemployment compensation benefits that Congress later codified in Section 340202a. Now, they haven't pointed to a single statutory provision, regulation, or revenue ruling that would have given Congress that view. There's simply no reason to believe that that hole existed before the enactment of Section 34020 and it's common ground that it doesn't exist after Section 34020. It's also important to understand why Congress enacted Section 34020. Congress enacted Section 34020 in response to a suggestion by the Treasury Department in 1969 that there was a problem with supplemental unemployment benefit payments. Supplemental unemployment benefit payments was a term that the IRS itself had used in a series of revenue rulings that considered certain payments by employers that were intended to supplement State unemployment compensation benefits. And the IRS in those rulings had determined that those benefits were not wages. Now, the IRS in 1969 informed Congress that because these benefits were considered non-wages, it was creating a problem, namely that income taxes weren't being withheld and the recipients of the payments were receiving large income tax bills at the end of the year. Congress enacted Section 34020 to address that specific problem. It did not intend to modify the definition of wages. It — nothing in the Section 34020 can be taken as a commentary on the definition of wages that was enacted. Kennedy, either then or now, were the supplemental unemployment benefit payments subject to FICA withholding, or are they now exempt under the present? So supplemental unemployment benefits, as defined by the IRS in its revenue rulings, were subject neither to withholding nor to taxation under FICA. And after O was passed? After O was passed, those wages. It's obviously subject to Federal income tax withholding. What about FICA? They still were not subject to FICA tax. Okay. And is that still true now? That's still true now under the current revenue ruling, Your Honor. I might have missed a step here. Why were they getting big tax bills if they're not wages? Well, they were still considered to be income under the revenue rulings. So the effect of that was that they were receiving payments during the year that were considered income and as to which they would owe income tax, but the income tax wasn't being regularly withheld as it is supposed to be on wages, and therefore at the end of the year they would receive a large income tax bill for those payments. If the Court has no further questions, I'll reserve the balance. Ginsburg. I have a question about the effect of the government's position. In the States, if these, if we say these benefits qualify as wages for FICA purposes, then what about the States that say we supply unemployment compensation only if there is not another source of unemployment compensation? Your Honor, if the Court adopts the government's position in this case, there's not going to be any change in the States because the government's position is the status quo. Now, there are certain States that do look to the Federal definition of wages in order to determine whether an individual qualifies for unemployment benefits under State law. And if the Court were to reach some other conclusion in this case than the one the government is urging, it is possible that there could be some effect in those States on qualification for State unemployment benefits. But since State unemployment benefit qualification is largely a matter of State law, the States could adjust to that however they saw fit. Kennedy, is it ever to the long-term advantage to the employee to have FICA withholding so that the employee's account is greater and the benefits are greater? So, first, certain employees may want that certain payments to count as wages because the definition of wages for FICA purposes is identical to the definition of wages under the Social Security Act. And under the Social Security Act, the accrual of benefits is based on wages. So some employees may want to have earned more wages. However, in this case, they are not making that argument. They are simply arguing that they shouldn't have to pay taxes on these payments, which were made, again, only to employees, were keyed to the employee's positions, salaries, and length of service, and clearly meet FICA's definition of wages. The Court has no further questions. Alito, sir. Alito, what if the payments were not keyed to the length of service and to salary? It was just a flat severance payment. We still think they would meet the basic definition of wages under FICA, Your Honor, and would still count as wages and be taxable under FICA. I think this case is even easier than that because the payments were clearly keyed to critical aspects of the employment relationship. Indeed, in the case of the postpetition payments, the payments were expressly conditioned on the employee's willingness to remain performing services for Respondents during the pendency of the bankruptcy proceedings. In the Coffey case, the Court drew a distinction between compensation for services and payments that are contingent on the employees being thrown out of work. Why doesn't that apply here? So Coffey was addressing not FICA, but a statute that dealt with veterans' rights returning to work after a period of military service. As construed by this Court, that statute drew a distinction between a reward for length of service to which the returning veteran was entitled and short-term compensation for services rendered to which the returning veteran, excuse me, was not entitled. Now, that distinction doesn't exist under FICA. Even if a particular payment is considered a reward for length of service, as this Court held that the payments in Coffey were, it would still be remuneration for services under FICA's definition of wages. For example, if you were to give an employee an award after 20 years of service, that would clearly be a reward for length of service and would qualify as such under Coffey, but would not be remuneration for employment. Now, the specific question you asked, Justice Alito, about the difference between payments that are part of continuing employment and payments that occur at the end of the employment relationship, is also not a distinction that FICA draws. As I said earlier, there are a number of historical and current exclusions for certain types of payments that are triggered by the end of the employment relationship. For example, from 1954 to 1983, the statute expressly excluded retirement pay. I don't think there's a reasonable reading of the basic definition of wages under FICA that would include retirement pay, but exclude severance payments. And again, I think it's very pertinent here, and probably the best piece of evidence we have in this case about congressional intent, that Congress from 1939 to 1950 excluded from the basic definition of wages in FICA certain types of dismissal payments, by which it meant payments on account of involuntary separation, and then it eliminated that exclusion in 1950, making clear, both as a statutory matter and it's clear in the legislative history, that such payments, that is, payments on account of involuntary separation, would from that point forward be covered as wages under FICA. If the Court has no further questions, I'll reserve my time. Thank you. Roberts. Mr. Hertzberg. Mr. Chief Justice, and may it please the Court. The government agrees that some subpayments are not wages. Where the dispute lies is what subpayments are covered by FICA and which are not. If the payments meet the definition of subpayment under the statute, then they are not wages and not subject to FICA. The government's — What are you saying? Subpayments? Supplemental unemployment benefits. I'm not hip. The government says they're not wages if they meet the definition, as they particularly see it in a particular revenue ruling that they issue at some point in time, and that's where the dispute lies. It is our position that subpayments is not remuneration for services because it is contingent, as indicated previously on the coffee case, upon losing your job. There's a problem on the public policy issue that the government is telling the Court today, and the problem is, is what they say is if subpay is tied to State unemployment benefits, then it is not wages and subject to FICA. They say if it's — if you receive supplemental unemployment benefits but you do not receive State unemployment, then it is subject to FICA taxes and is wages. So what they're saying to the Court is if you have the ability to receive both the supplemental unemployment benefits and the State unemployment benefits, then we're not going to tax you with FICA taxes. But if you only receive less being just the supplemental unemployment benefits, then it's going to be wages and then it's going to be subject to FICA taxes. Can you win at all if I think their regulation is irrational and contrary to the statute? Yes. I know that's not before us, but how do you win, assuming I just say I don't pay any attention to the regulation? Your Honor, it's our position that the statute is clear. When you look at the definition of wages under the FICA statute and the withholding statute, they're almost identical. And if you look at the Rowan case, the Rowan case says that you should read the statutes consistently for ease of administration. It is clear. Isn't it easier to withhold taxes on both? Pardon me? Isn't it easier to withhold taxes on both? Well, what they're withholding on the withholding is income taxes. They're not withholding wages, and that's why, because it doesn't fit the definition of wages. If you look at 3121, which is the FICA statute, supplemental unemployment benefit is not remuneration for services. The Rowan case. If it is treated for income tax purposes as wages, why shouldn't it be treated for FICA tax purposes? Your Honor. What you're saying is on the income side, they're treated as wages. On the FICA side, they're not treated as wages. Your Honor, supplemental unemployment benefits are provided to an individual to provide a safety net when they lose their job, to cover them during a period while they seek new employment. To then tax the individual with FICA taxes doesn't make sense because you're taking away the money that the individual needs as a safety net. And to take money away in order to provide for funding of Medicare or Social Security doesn't make sense. Why are they giving them the money? Just out of love? I mean, they don't give it to me when I retire. They only give it to their employees when they retire. What are they paying them for? Aren't they paying them for faithful and good past services? No. What they're doing is they're just being generous. They're putting in place a plan in order to protect the employee in the event of a layoff or a plant closing. Why don't they do that for me? I don't know, Your Honor. There are some severance payments that do count for FICA purposes. Isn't that so? Your Honor, severance is a generic term, but payments such as dismissal payments, some are treated as wages for FICA purposes. But we believe the definition is different for supplemental unemployment benefits. Under this, dismissal payments are for involuntary termination. It can be because of a firing or a cancellation of an employment contract, where supplemental unemployment benefits are based upon a plan and are given to an individual because of a plant closing or a layoff. What if Section 3402.0 did not exist? Would these severance payments fall within FICA's definition of wages, then? No. Why not? The reason is that because if you look at how they are treated, even the government acknowledges that some supplemental unemployment benefits are not wages. And if you look as far back as 1960, when 501C17 was enacted, dealing with trust and their exemption from the taxes, the definition of supplemental unemployment benefits has always had its own definition and has always been treated. In 1977, for example, the revenue ruling that the government issued said that supplemental unemployment benefits of any kind are not wages and subject to FICA. In 1986, Congress reenacted the withholding statute and the FICA statute with the knowledge that 1977 revenue ruling was in place, and therefore it's presumed that FICA taxes are not or that supplemental unemployment benefits are not subject to FICA taxes. The government has stipulated that the payments made in this case to the quality stores employees met the definition of supplemental unemployment benefits. And as I began to indicate, the Rowan case said that you should read statutes consistently and for ease of administration. When you look at 3121 being the FICA statute, along with 3401, the definition of wages is almost identical. Breyer. It is, but really, if you have anything, the definition is very broad. I mean, it says wages means all remuneration for employment. Wages means all remuneration for employment paid basically for any service of whatever nature performed by an employee. Now, I agree with you that it's the same definition for the withholding. But Congress, when it passes the withholding change, that's conflicting interpretations. So it wouldn't be the first time that Congress passed a statute to say, we don't care what the conflicting interpretations are, ignoring that, you're going to withhold this money, period. And it said whether it's other than wages or not. I grant you they might have thought they had to pass it, but so? You could also look at it as they didn't have to pass it. It was subject to withholding anyway. If subpay was wages, there would have been no need to pass 3402. Well, no, there would have been a need if different people think different things. So you want to be sure. Well, I mean, Congress does that quite a lot. It's uncertain. Different people tell them different things. They say, we don't care, do it anyway. And that's what this statute basically says. Withhold anyway. And maybe, could we say that? Could we say, well, in our opinion, you're right. Both statutes cover supplemental unemployment benefits. It's never come up in the other context since this, because Congress wanted to be sure it was withholding. I don't think you can, based upon when you look at what the statute says, 34020. It says that they should be treated as if they are wages. If they were already wages, there would have been no necessity of treating them if they were wages. If you also look at the title of the section, it says other than wages. It's clear that if it was wages, they wouldn't use the word other than wages. And if you look at the legislative history also, it says in three different places that they're not wages, and also indicates it's not remuneration for services. So the reason that 34020 was enacted was because of the 1968 Treasury regulation that had the reporting of supplemental unemployment benefits on a 1099 form. That's clearly not a wage form. If it's wages, you report on a W-2. So there would have been no need for enactment of 34020 if they were already wages. Ginsburg. Could you review again what is the relevant distinction between dismissal payments that are subject to FICA and payments that are not? Your Honor, dismissal payments are involuntary termination. It has to be involuntary? Yes. And that also is the beginning part of when you look at subpayments. And subpayments are all voluntary? All involuntary terminations. But that's where they differ at that point. You told me that the dismissal payments are involuntary. How about the supplemental? Are they ever and always voluntary? No. They're involuntary payments also, or based upon involuntary termination. The difference is supplemental unemployment benefits are paid pursuant to a plan, and they are also based upon a layoff or a plant closing. A dismissal payment, for example, which is a separate category, and treated separately in the Treasury regulations is an involuntary termination, and that's where it ends. And it can be based upon a loss of employment through a firing or a cancellation of a contract. I'll take it that you're right, that the Congress that passed the withholding statute thought it fell outside of the definition of wages. But they were wrong. Now, that wouldn't be the first time either. But Congress did think it. So what weight am I supposed to give to what Congress thought then about what an earlier Congress, namely the Congress that passed the wage definition in the withholding statute, thought? You should give it, Your Honor, a lot of weight, and the reason you should is because in 1986 the withholding and the FICA statute were reenacted in full, including 34020. And at that point in time there was a revenue ruling in place that said that all supplemental unemployment benefits are not wages and not subject to FICA. And under the legislative reenactment, Congress would have been presumed to have been aware of that revenue ruling that was in place. Well, yes, but that was so much the more so. You see, they had authority saying it wasn't wages. That doesn't mean that authority was correct. And so that's why they passed the statute. But what the important aspect is, is that it's not remuneration for services. And the Coffey case, which was not directly dealing with whether it was remuneration or not, indicated that supplemental unemployment benefits are given to an individual because of the loss of a job. And as I indicated, even the government has indicated that some supplemental unemployment benefits are not wages and subject to FICA. Where we differ is, is that we say that all of them are not wages and not subject to FICA. What the government says is, no, we'll issue a revenue ruling, and we flip-flopped our position several times on the different revenue rulings, but whatever revenue ruling we happen to issue at this point in time will determine whether the supplemental unemployment benefits qualify as wages for FICA purposes or are not wages. It's our position that this statute is clear. When you look at it, especially in light of 34020, and because there would have been no reason for enactment of that section if supplemental unemployment benefits were wages already, because they would have been subject to FICA. Well, the government explains 34020 on the ground that there had been prior IRS administrative decisions exempting certain types of subpayments from the definition of wages. And that can explain that language. The language that subpayments are to be treated as if they were wages doesn't necessarily mean that all of those subpayments are not wages. It does necessarily mean that at least some of them, or suggest at least some of them are not wages. So what's wrong with the government's explanation of the language along those lines? Because I think the language is clear. And the language is clear because it says, in the title it says, other than wages. If any of them were wages, they wouldn't have used the word other than wages. But looking at the statute itself and using the traditional tools of statutory interpretation, it says in the statute that they would be treated as if they were wages. If they were already wages, there would have been no need for the statute. And the legislative history shows us what Congress was thinking at that point in time, because it says in three different places these are not wages, and it also indicates it's not remuneration for services. Was the earlier statute definition of wages for tax purposes, was that reenacted at the same time? Yes, in 1986. So you really have — you call into play the principle that you should interpret a statute to make sense and not interpret any provision to be superfluous, right? Correct, Your Honor. And you say that the government's interpretation renders O superfluous? Absolutely, Your Honor. We'll ask him about that. Thank you. Thank you, counsel. Mr. Fagan, 18 minutes. Thank you, Mr. Chief Justice, and may it please the Court. I first want to address Justice Sotomayor's question. Justice Sotomayor, if you believe that the revenue rulings that the IRS has issued are irrational or invalid, the only colorable reason for believing that is because the payments that those revenue rulings classify as non-wages are clearly wages under FICA's basic definition. And if you believe the revenue rulings are invalid for that reason, then that is all the more reason to rule for the government here, because Respondent's position would create an even bigger hole in the statute that would classify even more payments as non-wages and is even less consistent with the statute. Mr. Fagan. What I was thinking. Why don't you answer Justice Scalia's point? Why is O not superfluous? So, Your Honor, we acknowledge that the revenue rulings are not consistent with the statutory text of FICA. The revenue rulings accept certain payments from classification as wages that the plain text of FICA unambiguously classifies as wages. The revenue rulings are a continuation of a practice that began in the 1950s and 1960s, which was a somewhat more freewheeling time in the history of statutory interpretation, and to the extent the IRS would defend these in a case in which they are challenged in court, it would not be because they are consistent with the text of the statute, but simply because Congress has taken the revenue rulings as a given and passed statutes that effectively assume that the revenue rulings are being effective, as Justice Breyer pointed out. You have to acknowledge, though, that if you read the two sections of the statute together, the one seems to be unnecessary. Well, a couple of points on that, Your Honor. Wages means all remuneration, including cash value of all remuneration, including benefits, and then O says extension of withholding to certain payments other than unemployment compensation benefit paid to an individual shall be treated as if it were a payment of wages, suggesting that it really isn't. Well, first, just to pick up on the textual point. I mean, there would have been a way to fix the revenue rulings without doing it this way. Couldn't they have done it some other way without enacting a statute that contradicted itself? Well, first of all, Your Honor, just to pick up on the textual point that Justice Alito, I think, was adverting to earlier, saying that particular types of payments shall be treated as if they were wages made during a payroll period doesn't mean that it's categorically impossible for such payments to have qualified as wages to begin with. As Judge Bryson pointed out in his opinion for the Federal Circuit in the CSX case, which is cited in our briefs, if you were to say to treat all men as if they were 6 feet tall, that wouldn't mean that no man could possibly be 6 feet tall. Yeah, unless it was in a section that said how to treat men who are not 6 feet tall. The title of this section, O, is Extension of Withholding to Certain Payments Other than Wages. Your Honor, it says — I mean, it clearly suggests that these are not wages. Well, first of all, Your Honor, it says certain payments other than wages. Second, I would point you to the part where it says treat it as wages for a payroll period. Right. And that actually has some significance in that it allows the employer to treat these as wages paid during the employer's normal payroll period so that withholding can be performed in the same way that the employee would have withheld for a normal payroll period payment, and avoids the need to apply the rules that would govern in circumstances where payments are made outside of a payroll period. And these are payments that could well have been made outside a normal payroll period, but this directs that they be treated as payments within a payroll period. I would again point the Court back to the historical reason why 34020 exists. It was enacted, as I discussed earlier, following a suggestion by the Treasury Department that there was a particular problem with withholding that needed to be solved. Now, Justice Scalia, I suppose Congress might have solved that problem in different ways, but I think what Congress did here is it simply tried to solve the problem once and for all. It just declared that these payments should be treated as if they were wages so that withholding would occur, thereby solving the problem that the IRS had identified. And it enacted a definition of supplemental unemployment compensation benefits that everyone agrees is broader than the set of payments that the revenue rulings up to that point had accepted. And there are a couple of very good reasons Congress would have done it that way. One is that because of the IRS's case-specific approach to each of its revenue rulings, it would have been difficult, if not impossible, for Congress to craft statutory language that precisely captured the contours of the payments that the IRS either was treating or might later treat as non-wages. Second, again, the supplemental unemployment benefit plans that had evolved in the 1950s continue to evolve and take different forms. And I think the IRS just wanted to hedge against the possibility — excuse me, Congress wanted to hedge against the possibility that the IRS might later decide that a plan structured slightly differently from any plan that it had considered before should also be considered non-wages. And there was absolutely no downside to Congress writing the definition in 3402.02a more broadly than the IRS revenue rulings had thus far had an opportunity to construe. And that's because, again, as the Federal Circuit pointed out, there is no practical harm done if you treat — if you are instructed to treat a particular payment as wages and that payment already is wages. Now, Your Honor, to your point about surplusage, first of all, I don't think the Kanagan surplusage would help you construe FICA here because I think FICA is unambiguous. I do not think there is any way to read the definition, remuneration for employment, considering that it clearly includes separation-related payments, as somehow, again, having a hole that is precisely the size and shape of Section 3402.02a. In any event, the only way this would be superfluous is if some court were to hold on an issue that's not presented to the court in this case that the IRS has absolutely no administrative authority to craft administrative exceptions to the definition of wages for policy reasons as it did in the revenue rulings that underlie the enactment of Section 3402.0 here. If a court were to reach that conclusion, then Section 3402.0 might not have any operative effect. But Congress in 1969 clearly could not have believed that the revenue rulings were ineffective, or it never would have enacted Section 3402.0 in the first place. There is no other reason Congress could have thought that certain types of supplemental unemployment benefits were accepted from the definition of wages. My friend on the other side mentioned these 1968 regulations. Those regulations only applied to payments from trusts. They didn't apply to payments like the payments at issue in this case that come directly from the employer. Those regulations did not purport to construe the definition of wages in either FICA or the income tax withholding statutes. And in fact, since 1957, there has been an income tax withholding regulation that specifically says that any payment on account of an employee's involuntary separation does constitute wages for withholding purposes, and Congress was presumably aware of that regulation. And again, I'd just like to just one final point. I think opposing counsel's argument about this 1986 reenactment doesn't make a great deal of sense. I think the argument is that when Congress reenacted the statute in 1986, it was somehow adopting the then current interpretation of the IRS in a 1977 revenue ruling. I don't think that the enactment of Section 3402.0 originally in 1969 can be taken to have left the IRS with sufficient flexibility to change its practices during the 1970s, but that the reenactment of that very same language in 1986 would be taken to freeze in for all time and the current IRS practices and foreclose the IRS from ever modifying those practices in the future. Finally, Respondents point to the legislative history of 3402.0, which does contain some statements that supplemental unemployment compensation benefits aren't wages. I think some of the reason for that legislative history is confusion about the nomenclature. There were supplemental unemployment compensation benefits, which was a statutory term, and supplemental unemployment benefits, which was the term the IRS used. I think it's clear that Congress must have been looking at the IRS revenue rulings again, because there's simply nothing else that could have possibly given the IRS the impression that any of these types of payments weren't wages to begin with. And I think it's very important the Court not just look at the legislative history piecemeal, but look at the entire historical backdrop. If it decides to get into any of that at all. We think this case is very easily resolved on the plain text of FICA, which clearly includes these payments. We don't even think there's a need to look at Section 3402.0, which is limited in effect to the income tax withholding provisions and was enacted to solve a specific income tax withholding-related problem and not to affect FICA's basic definition of wages. Ginsburg. How about that we should just ignore the revenue rulings, including the current one, and just deal with the statutes? Is that what you're suggesting? Well, the revenue rulings aren't directly at issue in this case, Your Honor, because all the revenue rulings do is specify that certain payments, not the type of payments that are issued in this case, are not wages. And nobody contends the revenue rulings have any effect or any special bearing on this case, because this is a case about payments that both the IRS and its revenue rulings and Congress under the plain text of FICA would classify as wages. Well, I think part of the point is that the broad capacious definition of wages at least doesn't seem as broad to the IRS, since they're carving things out, maybe not willy-nilly, but at least they don't seem that it's as broad as you do. They don't seem to think that it's as broad as you do. Well, two points to that, Your Honor. First, again, these exceptions first came into existence in the 1950s and 1960s, and I quite candidly don't think the IRS was as careful about fidelity to text as a modern legal observer would be. Second, if this Court were to believe that, notwithstanding the fact that the IRS's revenue rulings aren't directly at issue in this case, for the reasons I said to Justice Ginsburg, if this Court believes that it cannot rule for the government in this case on the statutory question without concluding that the revenue rulings are invalid, we still think the Court should rule for the government on the statutory question. We think the statutory text is clear, and that is the IRS's position, notwithstanding the revenue rulings. Ginsburg. And then what happens to the State compensation schemes, which the revenue rulings seem to have been trying to accommodate? So if this Court were to conclude that the government is correct as a statutory matter, but were to make clear that the current revenue ruling, Revenue Ruling 9072, is invalid, that might have some effect on individuals' eligibility for unemployment benefits under State law in those States that incorporate the Federal definition of wages as part of the calculation for eligibility for State unemployment benefits. If that creates any bad results, States will be able to fix them. And I don't think that it should preclude this Court from holding what the plain text of FICA, I think in this case, requires. Thank you. Thank you, counsel. The case is submitted.